W. Robert MARKER and Marylouise Marker, his wife, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 85–545–JLL.

United States District Court, D. Delaware.

Oct. 20, 1986.

Steven D. Goldberg of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., for plaintiffs.

William C. Carpenter, Jr., U.S. Atty., and Charlene D. Davis, Asst. U.S. Atty., Wilmington, Del., for defendant.

## OPINION

LATCHUM, Senior District Judge.

In this case, the plaintiffs W. Robert and Marylouise Marker ("the plaintiffs") request the Court to grant them declaratory and monetary relief against the defendant the United States of America ("the Government") due to the Government's alleged breach of provisions of a contract ("the contract") to convey certain property ("the property") to the plaintiffs. (*See* Docket Item ["D.I."] 1.) In a counterclaim, the Government seeks specific performance of the contract, or in the alternative, a monetary award of the amount specified in the liquidated damages clause of the contract and dismissal of plaintiffs' complaint. (*See* D.I. 6 last page.) Presently before the Court is the Government's motion for summary judgment requesting that this Court dismiss the plaintiffs' claims and grant the relief sought by the Government. (*See* D.I. 16.) The Court has jurisdiction over this matter under 28 U.S.C. §§ 1346(a)(2), 1491, 2201 in which the Government has waived its immunity from suits of this nature. For the reasons stated below, the Court will grant the Government's motion for summary judgment for specific performance and dismissal of plaintiffs' complaint.

## FACTS PERTAINING TO THIS MOTION

In the Spring of 1985, the Government, through the Farmers Home Administration ("FmHA"), advertised its willingness to accept bids on the sale of the property. (*See* D.I. 9 at ¶ 2; 7 at Exhibit ["Ex."] B.) Bids were to be submitted to the Government on Form 465–10. (*See id.*) Form 465–10 is in four sections and became the written manifestation of the contract once agreed to by the parties. (*See id.*) Section IV of Form 465–10 outlines the conditions and instructions of the contract.

The plaintiffs submitted a bid for the property of $162,200 by filling out Section II of Form 465–10. (*See* D.I. 9 at ¶ 1; 7 at Ex. A.) The plaintiffs also sent the required 5% of their bid amount as a deposit. (*See id.*) Under the contract, a bidder may select one of two available payment plans. Plan A requires the full price of the property upon receipt of a quitclaim deed from the Government. (*See id.*) Under plan B, a bidder may propose certain credit terms under which, if acceptable to the Government, the bidder could finance the price of the property through an FmHA loan. (*See id.*) The plaintiffs selected payment plan B. (*See id.*)

On June 6, 1985, the Government, through its employee Ms. Maureen Dempster, advised the plaintiffs that their bid had been accepted. (*See* D.I. 17 at Ex. 1.)

Since the plaintiffs had selected payment plan B, Ms. Dempster also informed the plaintiffs that they would have to provide the Government with certain financial information in order for their loan to be approved as provided by the contract. (*See id.*) On June 14, 1985, the Government formally accepted the plaintiffs' bid by completing Section III of form 465–10. (*See* D.I. 9 at ¶ 1; 7 at Ex. A.)

The plaintiffs submitted financial information forms for loan approval on July 18, 1985. (*See* D.I. 9 at ¶ 5; 7 at Ex. C.) However, for reasons not addressed by either party, the plaintiffs submitted a second set of forms with financial information on August 6, 1985. (*See* D.I. 9 at ¶ 4; 7 at Ex. D.) One day later, on August 7, 1985, the Government delivered an executed quitclaim deed to the property to the plaintiffs. (*See* D.I. 9 at ¶ 5; 7 at Ex. E.) The parties also agreed to meet on September 20, 1985 in order to execute the required note and security instruments to FmHA for the loan on the property. (*See* D.I. 17 at Ex. 1.) However, on August 16, 1985, the plaintiffs informed the FmHA of its belief that the Government had breached the contract by failing to deliver the deed within the thirty-day limit provided for under the conditions and instructions section of the contract. (*See id.*) The plaintiffs refused to execute the required financial instruments and demanded the return of their deposit. (*See id.*) Plaintiffs thereafter filed their complaint on September 10, 1985. (D.I. 1.)

**THE MERITS**

■ As a preliminary matter, this Court must decide what substantive law to apply in this case. This is an action against the Government for breach of a real estate contract. The Government, normally immune from such suits, has waived its immunity for this type of action. 28 U.S.C. §§ 1491, 1346(a)(2) (1982). Occasionally the jurisdictional statute in which the Govern-

ment waives its immunity will mandate the substantive law to apply. *See, e.g.,* 28 U.S.C. § 1346(b) (1982). *See also* 1A J. Moore, W.J. Taggart *Moore's Federal Practice* ¶ 0.321 (1985). However, when Congress is silent as to what law applies, as in this case, the courts must determine what law to apply. *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); 1A J. Moore, W.J. Taggart, *supra,* ¶ 0.321.

■ It is well settled that questions concerning a contract in which the United States exercises a constitutional power, such as the disposal of Government property, are controlled by general federal common law and not the law of any specific state. *E.g., United States v. Seckinger,* 397 U.S. 203, 209, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *United States v. Allegheny County,* 322 U.S. 174, 183, 64 S.Ct. 908, 913–14, 88 L.Ed. 1209 (1944) (citing cases). In fashioning this general federal rule, courts should seek the guidance of general principles of contract law. *Seckinger,* 397 U.S. at 210, 90 S.Ct. at 884–85; *see also Girard Trust Co. v. United States,* 149 F.2d 873, 874 (3d Cir.1945). Thus, this Court must apply general contract law principles and not the law of one specific state.

**I. THE DELIVERY OF THE DEED**

■ Plaintiffs first contend that the Government's failure to deliver the deed by July 14, 1985, thirty days after the Government accepted the plaintiffs' bid, constituted the nonperformance of a condition precedent, relieving the plaintiffs of their duty to perform under the contract. (*See* D.I. 21 at 6.) In response, the Government contends that the plaintiffs agreed to provide it with complete financial information in a timely fashion and that this promise was a condition precedent to the Government's duty to timely deliver the deed.[1]

---

**1.** The non-occurrence of a condition precedent relieves the party, in whose favor the condition worked, from further performance. 5 S. Williston, *A Treatise on the Law of Contracts* § 665 (3d ed. 1961). Thus, if this Court were to accept

the Government's argument that the delivery of the deed by the Government and the furnishing of financial information by the plaintiffs were both condition precedents that did not occur, both parties would be excused from future per-

(*See* D.I. 17 at 11.) This Court must decide which, if either, of these provisions constitutes a condition precedent, the non-occurrence of which would excuse a party's performance.

■ "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance.... If the condition is not fulfilled, the right to enforce the contract does not come into existence." 5 S. Williston, *A Treatise on The Law of Contracts*, § 663 (3d ed. 1961) (quoting *Lach v. Cahill*, 138 Conn. 418, 85 A.2d 481 (1951)). Whether a provision in a contract constitutes a condition precedent depends on the intention of the parties. In ascertaining these intentions a court must first look to the language of the contract, as well as the circumstances surrounding its execution. *Burger King Corp. v. Family Dining, Inc.*, 426 F.Supp. 485, 492 (E.D.Pa.), *aff'd*, 566 F.2d 1168 (3d Cir.1977); 5 S. Williston, *supra* at § 663.

■ Applying these principles to the case at bar, the Court concludes that the Government's delivery of the deed by July 14 was not a condition precedent to the plaintiffs' performance. The plaintiffs base their contention on the language in Section IV, paragraph 3 of the contract which reads:

(3) Within thirty (30) days after acceptance of the bid, the Government shall *prepare* for the successful bidder a quitclaim deed to the property, and if payment is under plan B, will also deliver the note and security instruments required. The bidder shall have ten days to return the executed instruments to the Government. *When the executed instruments are accepted and approved by the Government, the deed will be delivered.*

(*See* D.I. 9 at ¶ 1; 7 at Ex. A.) (Emphasis added.)

The plaintiffs interpret this provision as imposing a duty on the Government to deliver the deed within thirty days after accepting the bid. (*See* D.I. 21 at 5.) This interpretation is erroneous. The unambiguous language of this provision states that the Government will "prepare" a deed within the thirty-day limit. The deed was not to be delivered, under payment plan B, until the Government approved the plaintiffs' executed note and security instruments.[2] Thus the language of the contract indicates that the parties never intended delivery of the deed by July 14th to be a term of the contract, let alone a condition precedent to the plaintiffs' performance.

■ Furthermore, as stated in paragraph 3 quoted above, delivery of the deed was not to take place until the Government approved the plaintiffs' financial condition. This indicates that the parties intended the plaintiffs' submission of the required financial information to be a condition precedent to the Government's obligation of delivering the deed. The Government could not approve the plaintiffs' note and security instruments without reviewing the plaintiffs' financial information. The language

formance. *Id.* This would basically serve to rescind the contract, a result sought by the plaintiffs, not the Government. The Government's brief seems to realize this problem and attempts to avoid this result by arguing that there are "extenuating circumstances" in this case. (*See* D.I. 17 at 14.) The result could also be avoided if the Court found that the plaintiffs' failure to provide adequate financial information served to excuse the condition that the Government deliver the deed within the thirty-day limit. *See* 5 Williston, *supra*, § 676. However, due to the Court's decision that the Government's delivery of the deed within thirty days is not a condition precedent, the Court need not consider either of these arguments.

2. The record indicates that the Government delivered the executed quitclaim deed to the plaintiffs before receiving the executed note and security instruments. (*See* D.I. 9 at ¶ 5; 7 at Ex. E.) This is in conflict with the language of Section IV of the contract quoted in the text. Neither parties' brief explains why this occurred. However, in determining if a contract provision is a condition precedent, this Court must base its findings on the language of the contract and the parties' manifestations of their intentions at the time of the execution of the contract. *See* 5. S. Williston, *supra* note 1, § 663. Thus, the parties' actions at the time of delivery are irrelevant for our purposes.

of the contract further confirms this by providing that the plaintiffs must "furnish financial information upon request of the Government." (*See* D.I. 9 at ¶ 1; 7 at Ex. A.)

In addition, the circumstances surrounding the making of the contract indicate that the receipt of the plaintiffs' financial information was intended to be a condition precedent. When the plaintiffs selected payment plan B, the agreement of sale also became an application for an FmHA loan. Surely the Government would not be expected to agree to lend the plaintiffs over $125,000 without receiving adequate assurance of the plaintiffs' ability to repay the loan.

In sum, looking at the intentions of the parties as expressed through the language of the contract and the surrounding circumstances, *Burger King Co.*, 426 F.Supp. at 492, this Court concludes that the plaintiffs' obligation to supply adequate financial information was a condition precedent to the Government's duty to deliver the deed. However, the delivery of the deed by July 14th by the Government was not a condition precedent to the plaintiffs' performance.

Based on these conclusions, the Court will grant the Government's motion for summary judgment as to the plaintiffs' claim that the Government breached the contract by failing to timely deliver the deed. The Court is aware that the Government bears a heavy burden on its motion. A court may grant summary judgment on an issue only if there is no genuine dispute of fact with regard to that issue, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Further, in deciding a motion for summary judgment, a court must view all evidence, and inferences therefrom, in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nonetheless, the Government must prevail on this issue. The basic facts in this case are not disputed (*see generally* D.I. 9), and the contract clearly establishes that delivery of the deed by July 14th was not a condition precedent to the plaintiffs' duty to perform under the contract.

## II. THE ISSUE OF MARKETABLE TITLE

■ Second, plaintiffs contend that the Government breached the contract by failing to deliver "good and marketable title" to the property. (*See* D.I. 1 at ¶ 14.) The plaintiffs base this contention on the fact that the Government failed to disclose that 0.1607 acres of the advertised 5.5 acre property had been dedicated for public use. (*See* D.I. 21 at 13.) The Government responds that since title was to pass by quitclaim deed, the contract did not provide for a deed with any warranties or covenants. (*See* D.I. 17 at 17.) The Court finds the Government's arguments persuasive and will thus grant the Government's motion for summary judgment with respect to this issue as well.

■ The contract provides that title to the property would pass by a quitclaim deed. (*See* D.I. 9 at ¶ 1; 7 at Ex. A.) It is well settled that a quitclaim deed serves to pass only the interest in the property which the grantor possesses at the time of the conveyance. *State Department of Transportation v. Penn Central*, 445 A.2d 939, 946 (Del.Super.1982); 26 C.J.S. Deeds § 8 (1956). A party transferring property by a quitclaim deed makes no representations, covenants or warranties. *Rosenbaum v. McCaskey*, 386 So.2d 387 (Miss.1980); 23 Am.Jur.2d Deeds § 340 (1983).

When the Government contracted to transfer its interest in the property to the plaintiffs by a quitclaim deed, it obligated itself to transfer only the interest it actually possessed in the property. The Government owns 5.3393 acres of the property, the remaining 0.1607 acres having been dedicated for public use. (*See* D.I. 9 at ¶ 2; 7 at Ex. B.) Thus the Government agreed to sell, and the plaintiffs to purchase, 5.3393 acres of the property. Since the Government is prepared to transfer this amount of land to the plaintiffs, the Government has not breached the contract

by failing to deliver marketable title, and its motion for summary judgment will thus be granted on this issue.[3]

The Court does not find this result to be harsh. The plaintiffs bargained for a quit-claim deed and not a full warranty deed. Further, the record indicates that the plaintiffs had both actual and constructive knowledge that 0.1607 acres of the property had been dedicated for public use. The plaintiffs' constructive knowledge arose when a survey showing the public use dedication was recorded in the Recorder of Deeds Office of New Castle County. (*See* D.I. 1 at 3.) The plaintiffs received actual notice of the public use dedication from the map sent to the plaintiffs attached to the Government's invitation to bid on the property. (*See* D.I. 9 at ¶ 2; 7 at Ex. B.) The map illustrates that a percentage of the property had been dedicated to public use as a setoff for Route 896. (*See id.*)

## THE GOVERNMENT'S COUNTERCLAIM

The Government also requests summary judgment on its counterclaim. The Government's counterclaim asserts that it is entitled to specific performance because it has partially performed the contract and is willing to render complete performance upon receiving the plaintiffs' performance. (*See* D.I. 6 at ¶¶ 32–35.) The facts surrounding this dispute are not in controversy. The Government delivered to the plaintiffs a deed to the property on August 7, 1985. (*See* D.I. 9 at ¶ 5; 7 at Ex. E.) While the Government did not then deliver the note and security instruments to the plaintiffs for execution, it is uncontroverted that the delivery of those documents was to be delayed until September 20th in order to ac-

commodate the plaintiffs' schedule. (*See* D.I. 17 at Ex. 1.) The Government was ready to tender those documents to the plaintiffs on September 20th. However, the plaintiffs never appeared for the September 20th meeting, having advised the Government of their plan to repudiate the contract on August 16, 1985. Thus, the Government partially fulfilled its obligations under the contract, is ready to complete its performance, and is entitled to relief. (*See id.*)

■■■ The Government requests in the first instance that the Court grant it specific performance of the contract. (*See* D.I. 6 at ¶¶ 33–35.) Specific performance is an equitable remedy available only when there is no adequate remedy at law. *Chavin v. H.H. Rosin & Co.*, 246 A.2d 921, 922 (Del. Supr.1968); *Derwell Co. v. Apic Inc.*, 278 A.2d 338, 343 (Del.Ch.1971). Although not raised by the plaintiffs, there is an argument that a monetary award would satisfy the Government and specific performance is thus not appropriate. However, a legal remedy is inadequate if an assessment of monetary damages is impractical or too speculative. *Derwell Co.*, 278 A.2d at 343; *Equitable Trust Co. v. Gallagher*, 34 Del.Ch. 249, 102 A.2d 538, 546 (1954). Thus Courts have consistently granted specific performance to vendors in real estate contracts due to the somewhat speculative values of land and the difficulty of liquifying real estate. E.A. Farnsworth, *Contracts*, § 12.6 (1982); 81 C.J.S. Specific Performance § 77 (1977). *See also Derwell Co.*, 278 A.2d at 343. Based on this principle, the Court concludes that specific performance is an appropriate remedy in this case.[4]

---

**3.** The plaintiffs make several other allegations based on the fact that 0.1607 acres of the property have been dedicated for public use. The plaintiffs allege that the Government "breached its contract by failing to disclose that part of the land in question was dedicated to public use." (*See* D.I. 1 at ¶ 12.) The plaintiffs also claim that the Government "breached its contract with plaintiffs by attempting to sell land, a portion of which it did not have title to." (*See* D.I. 1 at ¶ 13.) Based on this Court's opinion that the Government only contracted to sell 5.3393 acres

of the property and thus did not breach the contract, the Court will grant the Government's motion for summary judgment as to these claims as well.

**4.** The liquidated damages clause of the contract illustrates the difficulty this Court would have in fixing damages. That provision provides:

*Liquidated Damages.* If the purchaser should fail to comply with any of the terms or conditions hereof, the Government, by mailing notice in writing, may terminate the con-

■ Finally, the presence of a liquidated damage provision in the contract is no bar to granting specific performance. Courts may grant specific performance despite the existence of a liquidated damage clause so long as the parties intended the clause to be security for the breaching party's performance and not an alternative form of performance by that party. J.N. Pomeroy, S.W. Symons, *A Treatise on Equity Jurisprudence*, § 446 (5th ed. 1941); *see also* 81 C.J.S. Specific Performance § 77 (1977). In this case, if the purchaser breaches the contract, the Government has the option of continuing under the contract or terminating it and demanding the liquidated damages amount. (*See* D.I. 9 at ¶ 1; 7 at Ex. A.) The contract does not permit the plaintiffs to exercise such an option. (*See id.*) Thus, the forfeiture of the deposit money serves as a penalty for nonperformance and not as an alternative means of performance. Specific performance is therefore an appropriate remedy.

Consequently, the Court will grant the Government's motion for summary judgment on its counterclaim, and order the plaintiffs to specifically perform their obligations under the contract. A judgment will be entered in accordance with this opinion.

tract for sale. The bid deposit and any installments of the purchase price already paid shall be retained, as partial liquidated damages, by the Government, which may thereupon at its option, again sell the property and recover from the defaulting purchaser any deficiency in price resulting from such resale, together with all expenses incurred by reason of the default. Such right shall be cumulative and in addition to any and all other rights, legal and equitable, which the Government may have under such circumstances.

Since the Government has not yet sold the property, this Court could not ascertain how much of a deficiency, if any, the Government may incur. As a result, any award of damages would be speculative.