**MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff,**

v.

**JAYHAWK ASSOCIATES, B & A Development, Inc., Robert L. Brock, B.B. Andersen, Alan D. Brock, Robert L. Brock, Jr., Clifton D. Gideon and Gary H. Keller, Defendants.**

No. 90 Civ. 5307 (RPP).

United States District Court, S.D. New York.

June 7, 1991.

Herrick, Feinstein by Barry Werbin, New York City, for plaintiff.

Wolf, Haldenstein, Adler, Freeman & Herz by Betsy C. Manifold, New York City, for defendant B.B. Andersen.

Christy & Viener by James M. Minamoto, New York City, for defendants Jayhawk Associates, B & A Development, Robert L. Brock, Alan D. Brock, Robert L. Brock, Jr., Clifton D. Gideon and Gary H. Keller.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Manufacturers Hanover Trust Company ("MHT") moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against all defendants and also moves for dismissal of defendant B.B. Andersen's counterclaims. At oral argument on May 13, 1991, the Court granted summary judgment to MHT for the reasons stated below.[1] For the

---

1. MHT also moved originally for default judgment against defendants Jayhawk Associates and B & A Development but withdrew that motion at oral argument when the Court grant-ed summary judgment to MHT from the bench, with an opinion to follow. Accordingly, the motion for a default judgment is not addressed.

same reasons, the counterclaims of defendant Andersen are also dismissed.

## STATEMENT OF FACTS

The present suit is an action to recover the principal sum of $1,811,865.57, plus interest, under a First Amendment to Modification and Extension Agreement (the "Loan Agreement"), a Renewal Note (the "Note") and a Guarantee, each of which is dated October 31, 1989.[2] The documents were executed in order to permit the refinancing of a real estate venture in which the defendants, among others, participated and which was first financed by MHT in 1982. The venture was undertaken by a general partnership called Jayhawk Towers, which, under a 1986 agreement (the "Modification and Extension Agreement") obtained an extension of the original maturity date of its obligation to MHT prior to the 1989 refinancing at issue here. In conjunction with the 1989 refinancing, Jayhawk Towers was dissolved, some of its partners paid down their shares of the partnership's obligation to MHT and certain other Jayhawk Towers partners formed a new, limited partnership which assumed all outstanding obligations of Jayhawk Towers. These new arrangements in October 1989 were memorialized by, *inter alia*, the Loan Agreement, the Note and the Guarantee. *See* Notice of Motion for Summary Judgment, Affidavit of Mary Ellen Whelehan, February 27, 1991 (the "Whelehan Affidavit"), and exhibits thereto; Reply Affidavit of Mary Ellen Whelehan, April 11, 1991 (the "Reply Whelehan Affidavit"), and exhibits thereto. The Note specified that the amount due to MHT under the Note was equal to a principal amount of $1,810,478.73 plus interest as set by the terms of the Note.

The Note matured on April 30, 1990, on which date there remained due and owing under the Note and the Loan Agreement outstanding principal in the amount of $1,803,266.39 plus unpaid deferred interest in the amount of $8,599.18 (which latter amount was capitalized and added to the outstanding balance), for a total of $1,811,865.57 of outstanding principal, as well as accrued unpaid interest for the period February, 1990 to April, 1990, in the amount of $45,081.66. Since April 30, 1990, interest has accrued on the outstanding principal balance of $1,811,865.57 at a default rate of interest provided for in the Note.

## DISCUSSION

MHT has established that the agreements were made by the defendants and the defendants have not met their obligations thereunder. The default and nonpayment of the obligations under the Loan Agreement, Note and Guarantee, and the execution of those documents, are not denied and are therefore deemed admitted. MHT has thus established a *prima facie* case that it is entitled to judgment. *See, e.g., Ihmels v. Kahn*, 126 A.D.2d 701, 511 N.Y.S.2d 306 (2d Dep't 1987). Defendants argue that MHT is not entitled to summary judgment because there exist genuine issues of material fact involving their defenses against enforcement of the obligation and their counterclaims against MHT.

In opposing a motion for summary judgment, when the moving party has carried its burden under Fed.R.Civ.P. 56(c), the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Matsushita Electric Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–26, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

I. The Claim of Improper Identification of the Corporate Defendants

Defendants Jayhawk Associates and B & A Development, Inc. argue, among other

---

**2.** The Guarantee is a single document, signed by all the defendants in this action, by which each guarantor guaranteed an individual share of the total, proportionate to his share in the partnership. Next to each partner's name appears the percentage which he agreed to guarantee individually. Exhibit C to the Whelehan Affidavit, *supra*.

things, that they were not properly named in this action, stating that their proper names are "Jayhawk Tower Associates, L.P." and "B & A Development Co., Inc.," respectively. This argument is without merit. The omission of "Co." from B & A Development's name is immaterial, as is the omission of "L.P." from the name of Jayhawk Associates. The parties are identified in the Complaint with sufficient detail that there is no confusion as to what entities are involved.

Defendants' argument that Jayhawk Associates is an unrelated entity and is not the limited partnership sought to be held here, and that the limited partnership which entered into the Loan Agreement, Note and Guarantee at issue here is Jayhawk Tower Associates, L.P., is also without merit. Each of the documents at issue, as well as the Dissolution Agreement of Jayhawk Towers, the original general partnership, states that the limited partnership assuming the general partnership's obligations, was to be named Jayhawk Associates. The Loan, the Note and the Guarantee signed by the partners referred to the new partnership as Jayhawk Associates. Exhibits A, B, C and J to the Whelehan Affidavit, *supra.* The Note, Exhibit B to the Whelehan Affidavit, is signed by "Robert L. Brock [Sr.]" directly under the two lines which read "Jayhawk Associates, L.P. (a Kansas limited partnership)" and his signature is notarized as having been signed by him "on behalf of Jayhawk Associates, a Kansas limited partnership," at which time he "acknowledged the execution of the same ... in his capacity as a duly authorized officer of the general partner of the partnership" based on his position as president of B & A Development Co., Inc. Exhibit B to the Whelehan Affidavit, *supra; see also* Exhibits A, C and J. Accordingly, whether Jayhawk Associates, L.P. is correctly named is not a genuine issue of material fact. The entity held in this action is that limited partnership which owns the buildings known as Jayhawk Towers, and whether it now uses the name Jayhawk

Associates, L.P. or Jayhawk Tower Associates, L.P., the individuals named in this action are partners of that partnership and the guarantors of the Note. The Complaint and other papers in this action are clear as to what entities and what individuals are sued.[3]

## II.  Other Claimed Issues of Fact

The other alleged issues of fact raised by the defenses pleaded are:

1.  Whether MHT was negligent in failing to obtain a letter of credit from Alfred Bloomingdale, who died in 1982 and was originally a general partner of Jayhawk Towers, in failing to pursue Bloomingdale's estate to recover his share of indebtedness (the "Bloomingdale share"), and in failing to disclose to defendants facts about MHT's relationship to Bloomingdale.

2.  Whether the Loan Agreement, Note and Guarantee are invalid and unenforceable, because of lack of consideration and economic duress.

3.  Whether the Releases of MHT, signed by the defendants in connection with the 1989 refinancing with respect to all prior actions, are unenforceable because of lack of consideration and economic duress.

Defendant B.B. Anderson expands upon these claims, claiming numerous issues of material fact which all relate to the validity and enforceability of the Loan Agreement, any relationship between MHT and Bloomingdale and MHT's dealings with Bloomingdale and whether they affect the amount of liability. Defendant B.B. Andersen's Memorandum of Law, at 38–40. In addition to claiming lack of consideration and economic duress, Andersen claims that the agreements at issue are "usurious" and thus unenforceable. Andersen also asserts six counterclaims against MHT, alleging lack of consideration, breach of contract, breach of the covenant of good faith and fair dealing, intentional and negligent misrepresentation and fraud, based on the same allega-

---

**3.**  It is also clear that this action does not name as a party the entity whose certificate of limited partnership is attached as Exhibit A to the Sup-

plemental Affidavit of James W. Parrish, April 2, 1991, assuming that the representations therein are accurate and complete.

tions of fact. The other defendants join in those portions of Andersen's papers applicable to them. The Guarantee, by its terms, provides for payment by defendants of the underlying obligation without set-off or counterclaim.

## A. *The Claim of Negligence by MHT*

■ Because all defendants, including Andersen, in November, 1989 released MHT "of and from any and all actions, causes of actions, suits, debts due, claims, obligations, liabilities and demands of any kind whatsoever, at law or in equity, known or unknown ... related to or in connection with any and all loans or other financings made or provided by MHT to JAYHAWK TOWERS, a Kansas general partnership ... arising out of or in any way connected with a certain extension of credit by MHT to the Partnership relating to the issuance of an Irrevocable Letter of Credit # SCO14158 ...", Exhibit H to the Whelehan Affidavit, *supra,* any claim that MHT was negligent in failing to pursue any amount due from the Bloomingdale estate in connection with MHT's prior extension of credit to Jayhawk Towers is irrelevant. Furthermore, defendant Robert L. Brock, Sr., had knowledge at least as early as November, 1986, that MHT had not obtained a letter of credit from Alfred Bloomingdale or any repayment from the Bloomingdale estate. Affidavit of Robert L. Brock, Sr., March 29, 1991, ¶¶ 7, 10. Under the New York law of partnership, this knowledge is imputed to all the partners and accordingly their Releases cover any claims based on MHT's actions with regard to the "Bloomingdale share." N.Y. Partnership Law § 23 (McKinney 1988). Any issues of fact as to the "Bloomingdale share" are, as a result, immaterial to this action.

Defendant B.B. Andersen asserts that further discovery is needed to determine the parties' intent as to the Releases, but the broad scope of the Releases is set forth in clear and unambiguous language and accordingly, further discovery is not necessary for the Court to construe it. Any claims of the partners that the amount of the Loan Agreement, Note or Guarantee should have been less *should be directed to* the general partner of Jayhawk Associates and those who represented the partners in the transaction, not to MHT, who would not have extended the terms of credit but for the defendants' agreement to the transaction in question.[4]

## B. *The Claim of Lack of Consideration for the Loan, Note and Guarantee*

■ The presence of consideration for the refinancing agreement is evident in the fact that the Loan Agreement, Note and Guarantee recited, among other things, that the maturity date for all obligations had been previously modified and extended as of December 3, 1986 and provided that the maturity date was further extended for a six-month period from October 31, 1989, to April 30, 1990.[5] Exhibit A to the Whelehan Affidavit, Preamble, ¶ 3; *see also,* Exhibits B and C. *See Weyerhaeuser Co. v. Gershman,* 324 F.2d 163, 165, 165 n. 3 (2d Cir.1963) (past consideration consisting of prior extension of credit suffices under New York law where guaranty is in writing and states the consideration); *Halpern v. Rosenbloom,* 459 F.Supp. 1346, 1354 n. 8 (S.D.N.Y.1978) (extension of time for payment of previous obligation is value received by debtor and constitutes valid consideration for guarantee). *See also,* Exhib-

**4.** Defendants also claim that there is an issue of fact as to whether MHT is estopped from asserting liability against defendants because of its own negligence. Their assertions do not establish a claim for equitable estoppel under New York law, since there is no showing of lack of knowledge or detrimental reliance when defendants entered into the 1989 agreements. *See Triple Cities Construction Co. v. Maryland Casualty Co.,* 4 N.Y.2d 443, 176 N.Y.S.2d 292, 151 N.E.2d 856 (N.Y.1958).

**5.** The December 3, 1986 Note had a maturity date of June 3, 1989. Exhibit 6 to the Affidavit of B.B. Andersen, March 28, 1991. This maturity date was apparently extended by 30 and 60–day increments while MHT and the Jayhawk Towers partnership worked out the 1989 refinancing which culminated in the Loan Agreement, Note and Guarantee of October 31, 1989. Exhibit I to the Whelehan Affidavit, *supra.*

it A to the Whelehan Affidavit, *supra*, at 1. Consideration is also evident in the fact that all the partners of Jayhawk Towers, a general partnership whose obligations were binding on each of its partners, were allowed to choose between paying down a part of the obligation at issue in proportion to their ownership, as some did, and thereby receiving a release from MHT, or becoming limited partners in the new entity, a limited partnership which would assume the outstanding balance of the obligation of Jayhawk Towers to MHT and increase each partner's interest in the real estate venture.

Defendants argue this does not constitute consideration on the ground that none of the partners of Jayhawk Towers were ever obligated for anything more than the amounts of their individual guarantees. Not only is this not the law as to the extent of the obligations of general partners, but each of the partners was on notice of the extent of his liability, as shown by the letter (and its enclosures) of Robert L. Brock, Sr., dated February 20, 1989, Exhibit L to the Reply Whelehan Affidavit, *supra*, and signed by Brock in his capacity as "Co–Managing Partner" of Jayhawk Towers. This letter forwarded to MHT the partnership's proposal, referred to as the "Parrish plan," for the reorganization of Jayhawk Towers as a limited partnership, and included the minutes of the partnership's meeting of January 30, 1989, during which Parrish explained to the partners the proposal for refinancing and generally outlined the refinancing which eventually took place. The Parrish plan states: "This plan is based on a basic premise that all general partners are now jointly and severally liable on all partnership obligations. One of those obligations is the indebtedness to MHT. Even though partners individually guaranteed only their proportional share of the note, the entire note itself is a general partnership obligation making all general

partners liable." Exhibit L to the Reply Whelehan Affidavit, *supra*.

### C. *The Claim of Economic Duress in Execution of Loan, Note and Guarantee*

Under New York law, a party claiming economic duress may only void a contract when it shows that there was a "wrongful threat by the other party which precluded the exercise of its free will" in making the contract at issue. *805 Third Avenue Co. v. M.W. Realty Assoc.*, 58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 448 N.E.2d 445 (N.Y.1983). *See also Bank Leumi Trust Co. v. D'Evori International, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909, 914 (1st Dep't 1990). A threat to insist upon one's legal rights is not a wrongful threat and does not constitute economic duress. *Edison Stone Corp. v. 42nd Street Development Corp.*, 145 A.D.2d 249, 538 N.Y.S.2d 249, 252 (1st Dep't 1989).[6]

The defendants have not made any factual showing that MHT did anything other than to protect its legal rights in connection with the 1989 refinancing. Defendants claim that they were under economic pressure in general but have not shown any duress by MHT. Because the defendants have made no factual showing of economic duress under New York law, there is no issue of fact as to duress. Accordingly, no genuine issue of material fact has been raised as to the validity and enforceability of the Loan, Note and Guarantee.

### D. *The Claim of Lack of Consideration for the Releases of MHT and Economic Duress in the Execution Thereof*

No genuine issue of material fact exists as to consideration or economic duress in

---

6. It is noted that the defendants did not repudiate the Loan Agreement, Note and Guarantee, until they defaulted on their obligations thereunder a substantial time after entering into the agreements, and made payments under them without objection. *See Bank Leumi Trust Co. v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909 (1st Dep't 1990). Under New York law, they will be deemed to have affirmed the agreements even if economic duress were evident. *Edison Stone Corp. v. 42nd Street Development Corp.*, 145 A.D.2d 249, 538 N.Y.S.2d 249, 251 (1st Dep't 1989).

connection with the documents signed. As stated above, first, there is no evidence of any economic duress imposed by MHT on the defendants and second, MHT exchanged its release of specific claims against the defendants, attached as Exhibit T to the Reply Whelehan Affidavit, *supra,* for their execution of the Releases of MHT. There was additional consideration for the Releases in the form of the extended term of credit, since the execution by defendants of the Releases was a condition of the Loan Agreement and the refinancing. Exhibit A to the Whelehan Affidavit, *supra,* ¶ 6(c)(ii). Accordingly, the claims that consideration was lacking for the Releases of MHT executed by the defendants and that the defendants executed Releases of MHT under economic duress fail.

## III. Defendants' Counterclaims

As to the counterclaims, the Guarantee, signed by each of the defendants, states that it is an "absolute and unconditional guarantee of payment without regard to the validity, regularity or enforceability of any document evidencing or securing the payment of the Obligations or the Assumed Obligations … and without regard to any defense, set-off or counterclaim which may at any time be available to or be asserted by the Company or the Assuming Entity against the Bank …" and that "the Assumed Obligations will be paid to the Bank without set-off or counterclaim." Whelehan Affidavit, *supra,* Exhibit C, ¶ 6; *see also, id,* ¶ 4.

Thus, the Guarantee makes immaterial any defenses, set-offs or counterclaims which rely on events related to the alleged "Bloomingdale share" or any defense related to it, or, indeed, any other defense to the enforceability against these defendants of the assumed obligations of Jayhawk Towers and the documents securing those obligations.[7] The Releases also operate to bar counterclaims such as those asserted here.[8]

### A. *Breach of Good Faith*

The defendants claim breach of good faith, which claim, they assert, cannot be waived by release as a matter of law under the New York Uniform Commercial Code. Their claim is based on nothing more than the same allegation that MHT failed to disclose to the partners facts about the Bloomingdale share. As stated above, the defendants are charged with notice and constructive knowledge of those facts at least as early as November, 1986, under N.Y. Partnership Law § 23 (McKinney 1988). Accordingly, there can be no claim based on any failure after November, 1986 to disclose facts about Bloomingdale. Defendants have not presented any facts to show how a breach of good faith by MHT prior to November, 1986 affects their liability under the 1989 documents at issue in this action, in which they acknowledged their outstanding obligation, specified the total amount due and the applicable rate of interest, and individually guaranteed the payment of portions of that specific total with interest.[9] Thus the claim of breach of good faith fails to raise a genuine issue of material fact.[10]

7. Andersen and the other defendants are businessmen who acknowledged in the Loan Agreement they had access to counsel, legal or otherwise, and fully understood the terms of the Loan Agreement and Guarantee. Exhibit A to the Whelehan Affidavit, *supra,* ¶ 17.

8. Andersen also asserts defenses of laches and failure to make timely demand, both of which are fully belied by the terms of the documents themselves and the other evidence before the Court.

9. The New York Uniform Commercial Code, § 1–203, provides in part that "[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." N.Y.U.C.C. § 1–203 (McKinney 1964 and Supp.

1991). Section 1–102(3) provides in part that "the obligations of good faith, diligence, reasonableness, and care prescribed by this Act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable." N.Y.U.C.C. § 1–102(3) (McKinney 1964 & Supp.1991).

10. There are also claims of fraud and misrepresentation based on the Bloomingdale share which fail for the same reason, and there are more general claims of fraud and misrepresentation which do not specify what actions of MHT in 1989 might constitute fraud or misrepresentation and thus do not comply with Rule 9(b) of the *Federal Rules of Civil Procedure.*

### B. *Usury*

The claim of usury is based on the faulty premise that each partner's outstanding liability before the refinancing was measured only by the individual amount guaranteed by each partner before the 1989 refinancing. Defendants calculate a 25% interest rate for six months on MHT's forbearance for the six-month period, based on the 25% increase in the 1989 individual amounts guaranteed over the previous individual amounts guaranteed. This ignores the fact that defendants, the partners of Jayhawk Towers who did not pay down their liabilities in proportion to their ownership before the dissolution of the general partnership, were jointly and severally liable for the entire outstanding partnership obligation to MHT until the general partnership was dissolved.[11] The defendants' calculations of a usurious "interest rate" are based on an incorrect premise and accordingly there is no valid claim of usury.

All the counterclaims are barred by the terms of the Guarantee and the Note, are insufficient and do not show that a genuine issue of material fact exists.

### CONCLUSION

For the reasons stated above, MHT's motion for summary judgment against all defendants is granted and the counterclaims are dismissed.

IT IS SO ORDERED.

---

11. It was at this point that the limited partnership formed by them assumed ownership of the real estate venture and assumed the general partnership's obligations, including MHT's outstanding loan in accordance with the terms of the refinancing documents. As regards the 1989 refinancing, each individual partner received from MHT a limitation of his individual liability and a forbearance by MHT from immediate demand on his joint and several liability for the full amount of the partnership's outstanding obligation. The remaining partners also benefited by an increased ownership interest in the real estate venture. In return, each remaining partner's 1989 individual guarantee was in an amount which was 25% greater than the amount of his previous individual guarantee. The partner's exposure to liability to MHT was reduced, however, under the 1989 refinancing agreement.