**LA MIRADA PRODUCTS CO., INC., formerly known as DAP Inc., an Ohio corporation, Plaintiff,**

v.

**WASSALL PLC, a foreign corporation, Defendant.**

**No. 92 Civ. 4669 (MBM).**

United States District Court, S.D. New York.

May 25, 1993.

Opinion Denying Reargument June 23, 1993.

Steven J. Harper, Scott W. Fowkes, Kirkland & Ellis, Chicago, IL, for plaintiff.

James H. Gale, Kirkland & Ellis, New York City, for plaintiff.

Greg A. Danilow, Weil, Gotshal & Manges, New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff moves for a judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), to compel defendant to fund a cash collateral account in plaintiff's name. For the reasons stated below, plaintiff's motion is granted. Defendant is directed to fund a cash collateral account in plaintiff's name in the amount of $1,505,838. Defendant's counterclaim is stayed pending arbitration.

### I.

On August 23, 1991 plaintiff La Mirada Products Co., Inc. (then known as DAP Inc.), USG Corp. (La Mirada's parent), and two other subsidiaries of USG Corp. entered into an Asset Purchase Agreement with defendant Wassall PLC and Wassall USA Acquisition, Inc. (a subsidiary of Wassall PLC, now known as DAP Products, Inc.). (Compl., Ex. A) The Asset Purchase Agreement established a procedure for adjusting the price paid by Wassall USA to La Mirada Products after the closing date, September 30, 1991. (*Id.* at 14–18) The Asset Purchase Agreement required that if Wassall USA disputed the proposed price adjustment, it was to deposit the disputed amount into a separate cash collateral account.[1] (*Id.* at 18) The dis-

---

1. Defendant Wassall PLC, a corporation organized under the laws of England and Wales, guaranteed the "full and prompt performance" of Wassall USA's obligation to fund the cash collateral account. (Compl., Ex. A ¶ 21 at 126) Apparently, Wassall USA is not a defendant here because there is not diversity between Wassall USA and either La Mirada or USG. Because the

pute was to be resolved in arbitration by Price Waterhouse or another nationally recognized independent accounting firm. (*Id.* at 15–16)

On September 20, 1991 the same parties entered into a Cash Collateral Account Agreement, which required that the cash collateral account be "in the name of and under the sole dominion and control" of La Mirada Products. (Compl., Ex. C at 2–3) On October 31, 1991 USG Corp. notified Wassall that the proposed price adjustment was $1,505,-838. (Compl., Ex. B) On November 27, 1991 Wassall USA objected to that entire amount. (Compl. Ex. D) Defendant admits that Wassall USA has not deposited any funds into the cash collateral account. (Answer ¶ 18 at 3–4)

In March 1992 defendant attempted to commence arbitration of the price dispute by calling Price Waterhouse. (Odoner Aff. ¶ 3) Price Waterhouse wrote a letter to arrange a conference call (*Id.*, Ex. A), but plaintiff refused to arbitrate until defendant funded the cash collateral account. (*Id.*, Ex. B)

Plaintiff now seeks a judgment on the pleadings ordering specific performance by defendant of Wassall USA's obligation to deposit $1,505,838 into a cash collateral account in plaintiff's "sole dominion and control." (Compl. at 9) Wassall counterclaims for approximately $1.7 million.

## II.

■ In evaluating a motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 (2d Cir.1985). The court must also take "the well-pleaded facts alleged in the complaint . . . as admitted," *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir.1974), and may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir. 1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Judgment on the pleadings may be granted only if, on the facts admitted, the moving party is clearly entitled to judgment. *Maggette v. Dalsheim,* 709 F.2d 800 (2d Cir.1983).

Defendant argues that material issues of fact exist with respect to (i) plaintiff's lack of an adequate remedy at law; (ii) plaintiff's bad faith intent to coerce the defendant into settlement and thereby avoid resolution of the parties' disputes by a neutral arbitrator; and (iii) plaintiff's unclean hands. Defendant's arguments are not persuasive. There is no dispute as to the material facts here; defendant admits that Wassall USA has not funded the cash collateral account. (Answer ¶ 18 at 3–4) Therefore, plaintiff's motion is granted.

### A.

■ First, and most important, La Mirada is entitled to specific performance because it has no adequate remedy at law. Under New York law, which applies here, a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law. *See, e.g., Mercantile–Safe Deposit and Trust Co. v. Trans World Airlines, Inc.,* 771 F.Supp. 90 (S.D.N.Y.1991); *Connecticut Nat'l Bank v. Trans World Airlines, Inc.,* 762 F.Supp. 76 (S.D.N.Y.1991); *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087 (S.D.N.Y.1989); *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.,* 470 F.Supp. 1308, 1324 (N.D.N.Y.1979).

Defendant argues that plaintiff has failed to establish the fourth requirement—the absence of an adequate remedy at law. Defendant is correct that plaintiff must allege facts

---

forum selection clause in the Asset Purchase Agreement required that plaintiff file this suit in federal court—a New York state judge has already dismissed this suit for that reason—plaintiff must be able to sue defendant Wassall PLC; otherwise, plaintiff would be barred from proceeding in any forum.

to show that an action for damages would be inadequate. *See, e.g.,* 96 N.Y.Jur.2d § 69 at 402–03 (1992) ("mere characterizations of difficulty [of proving damages] are not sufficient"). However, the remedy of specific performance rests entirely in the district court's discretion, and such discretion is to be exercised according to settled principles of equity with reference to the facts of the particular case. *United States v. Alexander,* 736 F.Supp. 1236 (N.D.N.Y.1989), *aff'd,* 901 F.2d 272 (2d Cir.1990).

■ Defendant argues that as general rule the courts will not specifically enforce a contract for the payment of money. Defendant is correct that specific performance usually is limited to contracts for whose breach the traditional remedy of damages is inappropriate because the unusual goods or services involved are difficult to value. *Litho Prestige, Div. of Unimedia Group, Inc. v. News America Pub., Inc.,* 652 F.Supp. 804, 809 (S.D.N.Y.1986).

■ However, when a court cannot arrive at a legal measure of damages with a sufficient degree of certainty, no adequate remedy at law exists and specific performance may be granted. *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96 (3rd Cir.1986). Put another way, the legal remedy is inadequate, so that specific performance may be ordered, if the assessment of monetary damages is impractical or too speculative. *Marker v. United States,* 646 F.Supp. 433, 438 (D.Del.1986). *See also City Centre One Assoc. v. Teachers Ins. and Annuity Ass'n,* 656 F.Supp. 658 (D.Utah 1987) (legal remedy may be inadequate where relief in the form of damages is not capable of estimation).

In this case, it would be impractical and inadequate to compute monetary damages after an arbitration, because there is no way to measure the detriment to plaintiff of defendant's failure to fund the account. In addition, defendant may be more willing to resolve this dispute in good faith and without undue delay if the disputed funds are in an account controlled by La Mirada. There is no way to measure the value of such willingness. Neither could the court value plaintiff's loss from the possibility that postponing a legal remedy until after arbitration would eliminate any benefit plaintiff might obtain during arbitration.

■ It is not enough to say that plaintiff is able recover damages after arbitration. That plaintiff has an available remedy at law does not bar specific performance. 96 N.Y.Jur.2d § 9 at 279 (1992). Rather, a court will order specific performance when the remedy at law is not as "certain, prompt, complete and efficient to attain the ends of justice and its prompt administration as the remedy in equity." *City of Buffalo v. Int'l Railway Co.,* 135 Misc. 504, 240 N.Y.S. 113, 117 (Sup.Ct.Erie County 1930), *aff'd,* 232 A.D. 868, 249 N.Y.S. 929 (4th Dep't 1931).

■ If the parties proceeded to arbitration but defendant did not first fund a cash collateral account in plaintiff's name, it would be nearly impossible for this Court to compute the damages to plaintiff from defendant's failure to fund the account. Therefore, it is both more efficient and fair to require that defendant fund the account in plaintiff's name now, as required by the Asset Purchase Agreement.

### B.

A handful of other issues remain. First, there is no evidence to support defendant's allegations that plaintiff acted in bad faith by (1) making the proposed price adjustment; (2) requesting that the account be controlled by USG rather than La Mirada; and (3) coercing defendant with the possibility that USG would declare bankruptcy. Defendant argues that if La Mirada has control over the money, it will be able to use the prospect of bankruptcy to "coerce defendants into a compromise of otherwise meritorious positions...." (Def. Mem. at 11) Defendant asserts that plaintiff is threatening defendants with the prospect of delay and/or a bankruptcy filing by plaintiff's parent, USG Corp.

However, plaintiff's motion is not an unlawful threat. Plaintiff simply seeks the advantage it gained as a natural consequence of the bargained-for agreements. The right to control the cash collateral account is valuable, regardless of the threat of bankruptcy. "A threat to insist on one's legal rights is not a wrongful threat...." *Manufacturers Hanover Trust Co. v. Jayhawk Assocs.,* 766 F.Supp. 124, 128 (S.D.N.Y.1991).

Second, there is no evidence to support an unclean hands defense. The Supreme Court has held that a party who acts unconscionably or in bad faith with respect to the subject matter of the litigation is precluded from obtaining equitable relief. *See, e.g., Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). However, as stated above, defendant may not maintain an unclean hands defense based on La Mirada's use of its bargained-for rights. Moreover, although La Mirada admits it owes Wassall USA money in connection with the counterclaim, it was Wassall USA—not La Mirada—that breached its obligations under the Asset Purchase Agreement.

Third, defendant's counterclaim should be stayed pending resolution of arbitration. *See Nilsen v. Prudential–Bache Sec.,* 761 F.Supp. 279, 288 (S.D.N.Y.1991) ("An order staying non-arbitrable claims is particularly appropriate if the arbitrable claims predominate...."). The arbitration provision in the Asset Purchase Agreement relates solely to "disputes" over the purchase price adjustment. (Compl., Ex. A § 2.2) Defendant's counterclaim seeks payment of certain "Excluded Liabilities" and "Property Taxes." (*Id.,* §§ 1.3(b), 11.3) These items do not relate to the purchase price adjustment dispute.

Fourth, as to attorneys' fees, in the Asset Purchase Agreement, defendant agreed to indemnify plaintiff from

> any and all Liabilities resulting from non-fulfillment of any agreement on the part of [defendant Wassall USA] under the terms of this Agreement....

(Compl., Ex. A. at 96) In turn, "Liabilities" were defined as "costs and expenses, including reasonable attorneys' fees and expenses." (*Id.* at 113) Based on these provisions, defendant may be liable for plaintiff's reasonable fees and costs. However, I will not resolve the issue of attorneys' fees until defendant's counterclaim is resolved, at which time the respective attorneys' fees can be offset.

Fifth, apparently anticipating defeat, defendant has suggested detailed arbitration procedures. (Def.Mem. at 16–18) I will not select particular procedures for arbitration;

such details are for the arbitrator, with input from both sides.

For the reasons stated above, plaintiff's motion is granted; defendant is directed to fund a cash collateral account in plaintiff's name, as specified above; and the parties are directed to proceed to arbitration. The remainder of the action is stayed pending further order of the Court.

**SO ORDERED:**

### OPINION AND ORDER ON REARGUMENT

Defendant moves for reargument of this Court's May 25, 1993 Opinion and Order staying litigation of defendant's counterclaim pending arbitration of certain other claims. The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 856 (2d Cir. 1987) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); *Nilsen v. Prudential-Bache Secs.,* 761 F.Supp. 279, 289 (S.D.N.Y.1991).

In violation of Local Rule 3(j)'s provision that "[n]o affidavits shall be filed by any party unless directed by the court," defendant submitted an affidavit with a copy of a complaint filed in the Circuit Court of Cook County, Illinois, and served on DAP Products, Inc. on May 25, 1993 (the "May 25 Complaint"). Defendant asserts that the May 25 Complaint is "related" to defendant's counterclaims, because the subject of the May 25 Complaint is the breach of four contracts "entered into ... at the time of [Wassall USA's] acquisition of the assets of DAP Inc. from USG." (Danilow Aff., Ex. A, ¶ 10) However, the May 25 Complaint involves claims by La Mirada which are completely different from defendant's non-arbitrable counterclaim for payment of certain "Excluded Liabilities" and "Property Taxes;" thus, the May 25 Complaint is "related" to defendant's counterclaim only in that the claims involve contracts entered into at the same time.

Defendant has not set forth any other matters or controlling decisions which were overlooked in staying the litigation related to

defendant's counterclaims. Accordingly, defendant's motion is denied.

SO ORDERED.