STATE OF NEW YORK, Respondent, v INTERNATIONAL FIDELITY INSURANCE COMPANY, Appellant.

Third Department, November 9, 1989

**APPEARANCES OF COUNSEL**

*Bond, Schoeneck & King (Arthur J. Siegel* and *Carl Rosen-bloom* of counsel), for appellant.

*Robert Abrams, Attorney-General (Lew A. Millenbach* and *Nancy A. Spiegel* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

This action was commenced by plaintiff, the State of New York (hereinafter the State), to recover $75,000, the amount defendant undertook to guarantee as surety under a bond for the payment of New York taxes due from Gasoline Marketers of America, Inc. (hereinafter GMA), a New Jersey corporation. The bond was originally issued by defendant in 1976, pursuant to the requirements of Tax Law § 283, when GMA applied for registration as a New York distributor of motor fuels. In January 1979, GMA filed for bankruptcy under Bankruptcy Act chapter 11 (11 USC ch 11). As a consequence, GMA was advised by New York tax authorities to file a rider to its bond changing the name of the principal obligor from GMA to

GMA "Debtor in Possession", and defendant duly issued an endorsement to that effect. GMA's registration as a motor fuel distributor in New York was similarly amended, although both its distributor's certificate number and its Federal I.D. number remained unchanged. Unknown to the State, by order of Bankruptcy Court on October 25, 1979, GMA's bankruptcy proceeding was dismissed, with an escrow bank account set up to pay certain creditors' claims, and it was revested with title to all its assets and continued to operate in New York.

In 1983, the New York Department of Taxation and Finance (hereinafter the Department) issued a determination of some $168,800 tax due on sales of gasoline in New York during the period from April 1980 through December 1982. This came as a result of discrepancies between GMA's tax returns for certain months filed with the Department, showing no taxable transfers, and New Jersey returns for the same months indicating the existence of significant taxable transfers of motor fuel in New York. Additionally, GMA was unwilling or unable to produce its books and records as requested during a field audit by the Department in early 1983. The notice of determination was made against GMA Debtor in Possession and mailed to GMA's last filed address on June 16, 1983, but was returned to the Department with a stamp indicating that the addressee had moved and that forwarding time had expired. The returned envelope also contained a handwritten notation of GMA's new address. On June 30, 1983, the notice of determination was mailed to the latter address and was not returned. No request for a redetermination was received by the Department and, hence, the determination became final September 30, 1983 (see, Tax Law § 288 [5]).

On April 4, 1983, defendant notified the Department that it was canceling its bond. Its notice referred to its principal as "Gasoline Marketers of America, Inc." In October 1984, the Department notified defendant of its unsuccessful efforts to collect from GMA the previously described assessment, plus another assessment, and demanded payment under the bond. Upon defendant's refusal to honor the demand, this action was commenced in March 1985. Shortly thereafter, at the suggestion of defendant's attorney, the State filed with Bankruptcy Court a proof of claim against GMA for the tax liability. In 1987, the trustee in bankruptcy moved to expunge the claim on the primary ground that it was interposed after the last date fixed for filing claims. An order of expungement

was granted, with prejudice, on March 9, 1987. The State asserts that it never received notice of the motion or of its determination.

■ Subsequent to the joinder of issue in this action, the State moved for summary judgment and defendant now appeals from the order granting the State's motion and the judgment entered thereon. We affirm. The State submitted proof in admissible form establishing its right to recovery, including the terms of the bond and GMA's tax liability in excess of the amount defendant undertook to pay thereunder. The bond did not require the State to prosecute any claim against GMA as principal debtor and, therefore, it was not obliged to first proceed against GMA before suing the surety (see, General Obligations Law § 15-701; *General Motors Acceptance Corp. v Fairway Dodge Sales,* 80 AD2d 740, 741). The failure of GMA to seek timely administrative review of the notice of determination of tax due resulted in the conclusiveness of the initial determination (see, *Matter of Halperin v Chu,* 138 AD2d 915, 917, *lv dismissed in part, lv denied in part* 72 NY2d 938). Defendant submitted no evidentiary material raising a genuine factual issue as to whether GMA received due notice of the determination.

The major issue raised by defendant on appeal is whether it was discharged from liability under the bond, which designated the principal obligor as GMA Debtor in Possession, when the bankruptcy proceeding was dismissed in 1979 and title to all business assets reverted to GMA. Defendant argues that its principal as named on the bond, GMA Debtor in Possession, ceased to exist when the bankruptcy proceeding was dismissed and GMA was restored to full control over its property and that, under the principle of strict construction of surety agreements, its obligation should not be extended to debts of GMA as the successor in interest to its named principal's fuel distributorship in New York.

The case law makes abundantly clear that mere formalistic changes in the identity of a principal obligor do not discharge the surety (*Richardson v County of Steuben,* 226 NY 13, 19; *People v Backus,* 117 NY 196, 202-203; *Fehr Bros. v Scheinman,* 121 AD2d 13, 16-17). The appropriate inquiry focuses on the extent to which the changes in form of the entity whose debts are guaranteed significantly alter the business dealing between the principal obligor and the creditor and whether they have a potentially adverse impact on the nature of the surety's undertaking, particularly on the degree of risk the

surety assumed in guaranteeing payment or performance *(Fehr Bros. v Scheinman, supra,* at 19). Pertinent to these factors are whether actual ownership or management control of the principal has been changed *(see, supra,* at 20), whether the principal's business activities pertinent to the guarantee have been altered *(supra)* and whether the changes in form or structure of the principal would have been reasonably within the contemplation of the surety when the guarantee was issued *(see, Richardson v County of Steuben, supra,* at 22-23; *People v Backus, supra,* at 203-204).

■ Applying the foregoing criteria to the facts and circumstances here, we have no difficulty in concluding that the change in status of the principal obligor from GMA Debtor in Possession to GMA did not discharge defendant's liability as surety. The bond was originally issued by defendant to the very same entity which eventually incurred the debt defendant is now being called upon to pay. The amendment was executed by the same officer of GMA who executed the original undertaking. GMA's motor fuel distribution operations were apparently unchanged throughout the pertinent period and, thus, there was no change in its relationship with its obligor, the State. When the rider to the bond changing the principal obligor to GMA Debtor in Possession was executed, defendant must have expected that GMA ultimately would either be liquidated or discharged from bankruptcy to resume operations as an independent corporate enterprise. Thus, restoration of GMA's full control over its business at the end of the bankruptcy proceeding should have been within defendant's contemplation when it issued the rider. In the absence of evidence to the contrary, and none has been submitted here, it is reasonable to infer that continuity of ownership and management control of GMA extended from the inception of its New York operations to beyond the dismissal of the bankruptcy proceeding. Similarly, without a showing otherwise, GMA's financial position must be presumed to have been strengthened as a result of the conclusion of the bankruptcy proceeding, rather than adversely affected. Thus, the change from GMA Debtor in Possession to GMA did not increase defendant's risk of liability under the bond. Moreover, defendant in its conduct during the pertinent period did not indicate that the changes in status of GMA were of significance. It continued to accept premiums on the bond for some four years after the dismissal of the bankruptcy proceeding and, when it notified the State of its cancellation of the bond in 1983,

referred to the principal obligor as GMA. For all of the foregoing reasons, the formalistic change in GMA's status did not work a discharge of defendant as surety.

■ Defendant's remaining argument, asserted for the first time on appeal, is that the order of Bankruptcy Court expunging the State's late-filed claim against GMA, with prejudice, has the res judicata effect of precluding the State's present cause of action against defendant as surety. The record establishes defendant's awareness of the expungement of the State's claim when it submitted papers in opposition to the State's motion for summary judgment, yet no application was made for leave to amend defendant's answer to assert a res judicata affirmative defense (see, CPLR 3025 [b]). The defense of res judicata cannot be asserted in the absence of affirmative pleading (CPLR 3211 [e]; see, Mayers v D'Agostino, 58 NY2d 696, 698). No excuse has been proferred for the failure to seek such relief before Supreme Court and, in any event, there are serious outstanding questions as to the viability of the defense, including, inter alia, whether the expungement was a disposition on the merits of the State's cause of action against GMA or merely a determination that the State's tardiness in filing its claim precluded it from sharing in the escrowed funds, set up when the bankruptcy proceeding was dismissed, for the payment in full of GMA's creditors who were put on notice and asserted claims before dismissal of the bankruptcy proceedings. Defendant has made no showing that the dismissal of the bankruptcy proceeding served to extinguish GMA's debt to the State (see, 11 USC § 349). Consequently, we are disinclined to grant leave to amend to assert the affirmative defense of res judicata on appeal (see, Mayers v D'Agostino, supra; Alexander v Seligman, 131 AD2d 528).

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Order and judgment affirmed, without costs.