**CONTINENTAL AIRLINES, INC., Plaintiff,**

v.

**Antonios E. LELAKIS, Defendant.**

No. 95 Civ. 10518 (SAS).

United States District Court, S.D. New York.

Sept. 19, 1996.

---

Andrew S. Ratzkin, Arnold & Porter, New York City, for Plaintiff.

Gavin J. Rooney, Lawrence M. Rolnick, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Defendant.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Plaintiff Continental Airlines, Inc. ("Continental") sues Antonios Lelakis ("Lelakis") to collect $10,735,329.02, plus interest, under a guaranty agreement entered into by the par-

ties in October 1994 as security for payment on a promissory note. The underlying note was executed by Regency Holdings (Cayman) Inc. ("Regency Holdings"), the corporation of which Lelakis was Chairman of the Board of Directors at all times relevant to this proceeding. Continental commenced this action by filing a motion for summary judgment in lieu of a complaint pursuant to New York Civil Practice Law and Rules § 3213, in New York State Supreme Court in November 1995. It was removed to this Court by defendant in December 1995 based on diversity of citizenship under 28 U.S.C. § 1332.

Continental has moved for summary judgment on the guaranty. In response, Lelakis does not dispute that he executed the guaranty as security for the note, nor that the note is past due and owing. Instead, Lelakis alleges three affirmative defenses that he asserts relieve him of his obligation under the guaranty: 1) that Continental fraudulently induced him to sign the guaranty by misrepresenting the nature of his personal liability pursuant to it; 2) that his signing of the guaranty resulted from economic duress; and 3) that the risks of the guaranty have changed dramatically due to events beyond his control, discharging him as a matter of law. For the reasons set forth below, Continental's motion is granted.

## II. FACTUAL BACKGROUND

Plaintiff Continental is a Delaware corporation with its principal office in Houston, Texas. Continental engages in the delivery of air travel services in the United States and throughout the world. *See* Complaint at ¶ 1. On August 29, 1989, plaintiff entered into a "Universal Air Travel Plan Subscriber's Contract" (the "UATP") with Regency Cruises, Inc. ("Regency Cruises"), the then-owner and operator of a fleet of pleasure ships. *See*

Certification of Antonios E. Lelakis ("Lelakis Cert."), dated July 10, 1996, at ¶ 4. Regency Cruises is a wholly owned subsidiary of Regency Holdings. *Id.* at ¶ 6. Defendant Antonios E. Lelakis, a Greek citizen[1], was Chairman of the Board of Directors of Regency Holdings during 1994. *Id.*

Under the UATP, plaintiff established an "Air Travel Plan Account" that permitted Regency Cruises to purchase air travel and other travel-related services from Continental and other airline and travel companies and charge those expenses to the Air Travel Plan Account. *See* Affidavit of Lawrence Kellner, Chief Financial Officer of Continental, in Support of Motion for Summary Judgment ("Kellner Aff."), dated June 27, 1996, at ¶¶ 7, 8. Pursuant to the UATP, plaintiff was entitled to bill Regency Cruises on at least a monthly basis for current and prior unpaid charges to Regency Cruises' Air Travel Plan Account. *Id.* at ¶ 9.

Starting in July 1994 and continuing through October 1994, Regency Cruises began to fall behind in its payments to the Air Travel Plan Account. *Id.* at ¶¶ 14–20. In September and October 1994, representatives of Continental and Regency Holdings met several times in an attempt to address the delinquent status of the account. *See* Affidavit of Michael Cox, Vice President and Treasurer of Continental, in Support of Motion for Summary Judgment ("Cox Aff."), dated July 18, 1996, at ¶¶ 3–5. As a result of these consultations, in October 1994 the UATP was amended, in relevant part, to provide that Regency Holdings would be jointly and severally liable with Regency Cruises for any existing debt as well as for the continuing performance of Regency Cruises under the UATP Contract. Kellner Aff. at ¶ 21. In addition, on October 20, 1994, Regency Holdings executed a promissory note to Continental in the amount of

---

**1.** Lelakis consented to the *in personam* jurisdiction of this Court pursuant to a forum selection provision in the guaranty, which states in relevant part:

> The Guarantor irrevocably agrees that any action or proceeding arising out of or relating to this Guaranty may be commenced in ... the United States District Court for the Southern District of New York, and agrees that a sum-

mons and complaint commencing an action or proceeding ... shall confer personal jurisdiction over the Guarantor if served personally or by certified mail on his agents....

Affidavit of Andrew S. Ratzkin, attorney for Continental, in Support of Plaintiff's Motion for Summary Judgment, dated June 27, 1996, Exhibit B at ¶ 10. Defendant admitted to this Court's jurisdiction. *See* Answer at ¶ 2.

$10,476,992.23 for past due amounts under the UATP, plus interest. *Id.* at ¶ 22. Regency Holdings pledged to pay by June 30, 1995, with the initial payment of principal and interest due on January 16, 1995. *Id.*

Finally, on that same date, defendant executed an individual guaranty to Continental for $10,476,992.23 as security for the note. *Id.* at ¶ 23. Under the guaranty, Lelakis agreed to guarantee unconditionally "the prompt payment of all principal of and interest on the [Regency Holdings] Note when due, whether by acceleration or otherwise." Affidavit of Andrew S. Ratzkin, attorney for Continental, in Support of Plaintiff's Motion for Summary Judgment ("Ratzkin Aff."), dated June 27, 1996, Exhibit B at ¶ 3. Additionally, the guaranty authorized Continental to "change the amount, time or manner of payment of the sums required to be paid pursuant to the Note; (b) change any of the terms, covenants, conditions or provisions of the Note; [and] (c) amend, modify, change or supplement the Note...." *Id.* at ¶ 6. The guaranty was drafted by counsel for Regency Holdings, Robert Shaw, at the request of Regency Holdings' Chief Financial Officer, David Groelinger. *See* Certification of Robert Shaw, counsel to Regency Cruises and Regency Holdings, in Opposition to Plaintiff's Motion for Summary Judgment, undated, at ¶ 4.

Plaintiff alleges and defendant does not dispute that Regency Holdings made no payment under the note. *See* Plaintiff's Statement of Material Facts Pursuant to Local Rule 3(g) at ¶ 28; Defendant's Civil Rule 3(g) Statement of Disputed Facts at ¶ 1. As a consequence, in January 1995, Regency Holdings executed an amended and restated promissory note to plaintiff in the amount of $10,735,329.02 to reflect accumulated interest. *See* Ratzkin Aff., Exhibit C. Plaintiff and Regency Holdings also negotiated a repayment schedule that would have satisfied the amended note by June 1995. *Id.* Plaintiff alleges that Regency Holdings made only the first two payments under the amended note but failed to make any subsequent payments. *See* Kellner Aff. at ¶ 30. In response, on March 2, 1995, plaintiff notified both defendant and Regency Holdings that

Regency Holdings was in default under the amended note, accelerated the amounts due and demanded payment. *Id.* at ¶ 31. Plaintiff alleges that Regency Holdings made three additional payments toward the amended note after March 2, 1995. *Id.* at ¶ 32. The parties do not dispute that defendant has made no payments to Continental pursuant to the guaranty.

In November 1995, Regency Holdings, together with its subsidiaries, including Regency Cruises, voluntarily filed for bankruptcy under Chapter 11. Affidavit of John Luth, Senior Vice President—Business Units & Chief Information Officer of Continental, in Support of Motion for Summary Judgment ("Luth Aff."), dated July 19, 1996, at ¶ 11.

## III. DISCUSSION

### A. *Standard for Summary Judgment*

A party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of a material factual dispute rests on the moving party. *See Gallo v. Prudential Residential Services, Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). The nonmoving party must present "significant probative supporting evidence" that a factual dispute exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Whether a fact has a bearing on the outcome of the motion is determined by the governing substantive law. *Id.* at 248, 106 S.Ct. at 2510.

The court is not to try issues of fact, but to determine whether issues exist to be tried. *See Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–

14; *Donahue,* 834 F.2d at 57, 60. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

In contract actions, "summary judgment is appropriate where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *United States v. 0.35 of an Acre of Land,* 706 F.Supp. 1064, 1070 (S.D.N.Y.1988). A court may not draw any inference or give any construction to the terms of a written contract that "may be in conflict with the clearly expressed language of the written agreement." *Id.*

### B. *Summary Judgment on the Guaranty*

 The governing law in this matter is the law of contracts. The objective of contract interpretation is to give effect to the expressed intentions of the parties. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989). Guaranty agreements are to be construed under ordinary principles of contract construction. *See Banco Portugues do Atlantico v. Asland, S.A.,* 745 F.Supp. 962, 967 (S.D.N.Y.1990). If the intent of the parties is clear from the four corners of the agreement, its interpretation is a matter of law that the court may determine by summary judgment. *See Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990). "Where contractual language is plain on its face, it should be so construed as a matter of law in the summary judgment context." *Price v. Bartkowiak,* 715 F.Supp. 76, 79 (S.D.N.Y.1989).

The guaranty at issue here is entirely unambiguous and its terms are not disputed by the parties. The guaranty states that it "is executed by Antonios E. Lelakis as security for the obligations of REGENCY HOLDINGS (CAYMAN), INC. under a promissory note ... executed and delivered by Regency to Continental Airlines Corp. ... and by its terms payable by Regency on or before June 30, 1995." Ratkin Aff., Exhibit B at ¶ 1. Under the guaranty, Lelakis "UNCONDITIONALLY GUARANTEES: ... the prompt payment of all principal of and interest on the Note when due, whether by acceleration or otherwise." *Id.* at ¶ 3. Lelakis does not dispute that the amended note is due and owing, or that he has failed to make any payment toward its satisfaction. Absent a valid defense, Lelakis is obligated to pay the amount due and owing under the amended note.

### C. *Legal Sufficiency of the Defendant's Affirmative Defenses*

Lelakis raises three affirmative defenses to the enforcement of the guaranty. While a movant for summary judgment always bears the burden of production, if a plaintiff also uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense on which the defendant bears the burden of proof at trial, the plaintiff "may satisfy its Rule 56 burden by showing 'that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'" *DiCola v. SwissRe Holding (North America), Inc.,* 996 F.2d 30, 32 (2d Cir.1993) (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54 (brackets in original)); *see also F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y. 1996) (*Celotex* language necessarily means that one who relies on affirmative defense to defeat otherwise meritorious summary judgment motion must adduce evidence that would permit judgment for non-moving party on the basis of that defense). As the Second Circuit has noted, "in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." *Giammettei,* 34 F.3d at 54–55 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53).

Because Lelakis bears the burden of proving his affirmative defenses at trial, Continental need not support its summary judgment motion with affidavits or other materials that tend to disprove Lelakis' de-

fenses, *id.* at 54; rather, Continental is entitled to summary judgment if there is no evidence, viewed in a light most favorable to Lelakis, supporting an essential element of the particular defense Continental seeks to strike.

### 1. *Fraudulent Inducement*

 To prevail on the defense of fraudulent inducement and thereby render a contract voidable under New York law, the party seeking to avoid the contract must demonstrate that in entering the agreement, he justifiably relied to his detriment upon a false representation of a material fact. *See Frankel*, 930 F.Supp. at 65. A party's mere assertion of reliance, however, is not sufficient to support a defense of fraudulent inducement; the party's reliance must be reasonable under the circumstances. *See Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484–5 (2d Cir.1995); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F.Supp. 512, 526 (S.D.N.Y.1996).

In addition, the New York Court of Appeals has held that if the party asserting a fraudulent inducement defense alleges that he did not understand the document he signed because of an inability to speak or read English, and that a misrepresentation was made as to the nature of the document, the document is void unless the signer was negligent. In *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–63, 170 N.E. 530 (1930), Justice Cardozo found that:

> Ordinarily, the signer of a deed or other instrument is conclusively bound thereby.... If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent.... If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.

To defeat a summary judgment motion to strike this defense, Lelakis must present facts sufficient to show that he was not negligent in signing the guaranty.

██ Defendant alleges that his spoken and written English skills are limited, and as such, he did not understand all that transpired at the October 5, 1994 meeting at which the guaranty was negotiated. Lelakis Cert. at ¶ 8. Defendant further contends that Continental represented that the guaranty was only an "assurance" that Regency Cruises would meet its obligations under the UATP that he was asked to sign as chairman of Regency Holdings, and not a personal guaranty that defendant himself would pay if Regency Cruises did not. *Id.* at ¶ 10. Under Greek law, defendant contends, such an assurance only exposes the signer to liability after corporate assets are exhausted. *See* Certification of Theodore Skoulas, attorney licensed to practice law in Greece, in Opposition to Plaintiff's Motion for Summary Judgment, dated July 10, 1996, at ¶ 2.

Drawing all inferences in favor of the defendant, Lelakis has presented facts sufficient to support two of the three essential elements of his fraudulent inducement claim: that he does not understand English and that Continental misrepresented the nature of the guaranty to him.[2] Lelakis has not, however,

---

**2.** Continental argues that Lelakis has failed to satisfy the particularity requirement of Federal Rule 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This requirement applies to allegations of fraud as an affirmative defense. *See Ediciones Quiroga v. Fall River Music, Inc.*, 1996 WL 148363, at *3 (S.D.N.Y. April 2, 1996); *Park & Lexington 25th Street Corp. v. Fed'l Ins. Co.*, 1995 WL 217552, at *1 (S.D.N.Y. April 13, 1996). Under Rule 9(b), an allegation of fraud must:

> adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.

*Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Although Lelakis fails in his supporting affidavits to identify the speaker of the alleged misrepresentation (and in fact misidentified the speaker due to an alleged error by counsel), and instead alleges merely that Continental made the misrepresentation, he has identified the meeting at which the alleged representation was made and the substance of the alleged misrepresentation. As plaintiff does not dispute the occurrence of the meeting, nor the attendance of the employees

presented facts sufficient to support the third element of his fraudulent inducement defense, namely that he was not negligent in signing the guaranty.

Lelakis alleges that when he attended the October 5, 1994 meeting, he believed he did so in his corporate and not his individual capacity. After the meeting, at the request of Regency Holdings' Chief Financial Officer, David Groelinger, Regency Holdings' counsel, Robert Shaw, drafted the guaranty. Defendant alleges that he was unaware of Shaw's involvement at the time. Although Shaw is fluent in both English and Greek, Lelakis alleges that he and Shaw neither discussed the guaranty, nor did Shaw translate the guaranty into Greek for defendant then or at any time after the meeting.

Defendant admits that his usual practice is to consult with counsel or to have legal documents translated into Greek before affixing his signature. Yet when he received the final draft guaranty at a later date, he departed from his usual practice and did neither because he believed that Continental had already explained its meaning to him. In fact, Lelakis failed to take any of these steps despite his admission that he had encountered and signed personal guaranties in a corporate setting in past transactions.

Defendant argues that he was not negligent because he was unrepresented by counsel in his individual capacity at the time when the guaranty was negotiated, and therefore was entitled to rely on Continental's representations. Lelakis, however, had a minimal duty to inquire of Robert Shaw, the corporation's bilingual attorney, about the nature of a document he was signing on the corporation's behalf. Had he inquired of Shaw in his corporate capacity, he would have learned the nature of the guaranty.

*National Bank of North America v. Chu,* 64 A.D.2d 573, 407 N.Y.S.2d 43 (1st Dep't 1978), *rev'd and dissenting opinion adopted by,* 47 N.Y.2d 946, 419 N.Y.S.2d 970, 393 N.E.2d 1042 (1979), relied on by Lelakis, is easily distinguishable. In *Chu,* the defendant alleged that he was fraudulently in-

responsible for negotiating the guaranty at issue here, Lelakis has satisfied the requirements of

duced to sign an individual guaranty of a loan to a corporate defendant on the basis of misrepresentations by the plaintiff that the document related solely to the signing of checks. *Id.* 407 N.Y.S.2d at 43. Like Lelakis, the defendant in *Chu* alleged that he was not fluent in English; unlike Lelakis, he alleged that he did not even know what a guaranty was. The Appellate Division affirmed the trial court's grant of summary judgment, which was reversed by the Court of Appeals for reasons stated in the dissenting Appellate Division opinion. As the Court in *Chu* noted:

> This is not a situation in which defendant signed without reading an instrument that he knew imposed some liability on him and the general character of which he understood.... This defendant believed that he was signing an instrument that authorized him to sign checks, not one that exposed him to financial liability. This assurance came from a friend whom he had no reason whatever to distrust.... The fact that the bank official made no inquiry as to his finances would surely negate any thought that he was about to sign a guaranty....

*Id.* at 46. By contrast, Lelakis knew he was signing a document that imposed some financial liability on him. In a supporting affidavit submitted on defendant's behalf, Theodore Skoulas, a Greek attorney, certifies that Greek personal guaranties (or "assurances") are junior to corporate guaranties, not that they are unenforceable. Thus even under Lelakis' alleged understanding that he was signing an assurance, he was aware of his potential exposure to personal liability in the event of Regency Holdings' default. Moreover, Continental inquired into Lelakis' finances, and received a statement of assets of the Lelakis' Group of Companies, of which Regency Holdings was one of many listed assets. The inclusion of assets unrelated to the Regency Holdings transaction should have alerted Lelakis to follow his normal procedure of consulting an attorney about the nature of the guaranty.

9(b).

Unlike the defendant in *Chu*, who was presented with the guaranty moments after he agreed to sign what he thought was an entirely different document, Lelakis had several days between the negotiation of the guaranty and signing it. He had ample time to follow his usual procedure of ascertaining the nature of what he was signing. And, unlike the defendant in *Chu*, Lelakis attended the meeting at which the guaranty was negotiated with two members of the Regency Holdings team—CFO David Groelinger and David Stamoulis, President. Thus, for Lelakis to claim that he was not negligent, he must succeed in shifting the burden of his failure to communicate about the guaranty with his own counsel and organization—the very people who drafted, negotiated, and arranged for his execution of the guaranty—onto Continental.

Finally, defendant's alleged inability to speak English does not obliterate the overarching requirement of a fraudulent inducement defense that his reliance on Continental's representations be justified and reasonable. *See, e.g., Remington Rand Corp.*, 68 F.3d at 1484–85; *Hasbro*, 924 F.Supp. at 526.

> It has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the representation, he must make use of those means or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.

*Dunkin' Donuts of America v. Liberatore*, 138 A.D.2d 559, 526 N.Y.S.2d 141, 143 (2d Dep't 1988); *see also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) (finding that party claiming fraudulent inducement must use means available to him to learn the quality of representation). Here, Lelakis has not alleged, nor can he allege that the nature of the guaranty was peculiarly within Continental's knowledge, when he had ample opportunity to have the guaranty either explained to him or translated before he actually signed it. This is particularly true when Lelakis

acknowledges that his failure to do so departed from his normal course of action. Moreover, Lelakis' own team negotiated with Continental for the guaranty with Lelakis present. Even if he did not understand all that transpired, he unjustifiably credited Continental's explanation without so much as asking for an explanation from his own team.

Under the circumstances, defendant was negligent as a matter of law in failing to take any steps either at the October 5, 1995 meeting, or in the intervening days before he signed the guaranty on October 21, 1995 to ascertain the nature of the guaranty, as was his custom in business transactions. In addition, defendant's reliance on Continental's alleged misrepresentation was not justified under the circumstances. Because Lelakis has failed to raise sufficient facts to support an essential element of his fraudulent inducement defense, Continental is entitled to summary judgment on this defense.

### 2. *Economic Duress*

■ In order to prove that a guaranty was executed under economic duress, a defendant must establish that a wrongful threat precluded the exercise of its free will and caused an involuntary acceptance of contractual terms. *See Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971); *US West Financial Services, Inc. v. Tollman*, 786 F.Supp. 333, 338 (S.D.N.Y.1992); *Manufacturers Hanover Trust Co. v. Jayhawk Assoc.*, 766 F.Supp. 124, 128 (S.D.N.Y.1991). A party's threat to take action which it is legally entitled to take is not wrongful, nor is a threat to insist upon one's legal rights. *See US West*, 786 F.Supp. at 338; *Manufacturers Hanover*, 766 F.Supp. at 128. The mere existence of economic pressure does not constitute duress. *See, e.g., Walbern Press, Inc. v. C.V. Communications Inc.*, 212 A.D.2d 460, 622 N.Y.S.2d 951, 952 (1st Dep't 1995) (citing, *inter alia, Austin Instrument*, 29 N.Y.2d at 130–31, 324 N.Y.S.2d 22, 272 N.E.2d 533). As noted above, because Lelakis bears the burden of proof on his affirmative defenses at trial, he must come forward with sufficient evidence to support each element of the duress defense. *See, e.g., DiCola*, 996 F.2d at 32.

■ Lelakis alleges that in the meeting with Continental's representatives, Continental threatened to cut off Regency Cruises' access to air travel ticketing on other airlines or with travel agents if Lelakis did not sign the guaranty. Because of this threat, Lelakis signed the guaranty.[3] Lelakis believed that if Continental blocked Regency Cruises' air ticketing access, the Regency Cruise line would have been unable to obtain passengers and would have gone out of business. Supplemental Certification of Antonios Lelakis, dated August 1996, at ¶ 13.

Lelakis admits that Continental had a right to terminate the UATP contract. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, at 21 n. 7. According to the contract terms, the account holder not only loses credit to purchase tickets of the issuing airline, but loses the issuer's credit for flights on any airline. Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment, at 10. Other carriers are notified not to honor the cancelled account in order to effectuate the rescinding of credit. *Id.* Lelakis urges that while Continental had the right to

cancel the UATP, Continental's threat was wrongful with respect to cutting off Regency Cruises' access to other airlines. This assertion, however, ignores the UATP terms outlined above. Lelakis has failed to present sufficient evidence to indicate that Continental threatened to do anything more than that which it was entitled to do pursuant to the UATP.[4]

As noted above, a party's threat to do that which it is legally entitled to do is not wrongful. *See US West,* 786 F.Supp. at 338; *Manufacturers Hanover,* 766 F.Supp. at 128. The wrongfulness of the threat is fundamental to the economic duress defense. Because Continental's threat to cut off Regency Cruises credit was not wrongful, Lelakis has failed to present evidence to support an essential element of his economic duress defense. Lelakis bears the burden of proving his economic duress defense at trial and must present evidence to support each element of that defense to defeat summary judgment. Because Lelakis has failed to do so, Continental is entitled to summary judgment on this defense as well.[5]

**3.** Lelakis' allegations under the fraudulent inducement and economic duress defenses appear to be inconsistent. In support of his fraudulent inducement defense, Lelakis alleges he believed the guaranty was merely an assurance that Regency Holdings would pay the debt it admittedly owed Continental under the amended note. In addition, he alleges that he believed this assurance exposed him to little or no liability, and was merely a goodwill gesture. In support of his economic duress defense, Lelakis alleges that Continental's unlawful threat forced him to sign the assurance, which he would not have done but for the threat. In essence, then, Lelakis claims that Continental threatened him into signing a document he believed was merely a goodwill gesture, with little or no adverse effect on him. Either the threat overwhelmed Lelakis' free will, thereby forcing him to expose himself to liability to which he would not otherwise have consented, or he believed the document was merely a goodwill gesture, which would negate the charge that he was unfairly threatened by Continental's demand.

**4.** The record indicates that Continental only threatened to cancel Regency Cruises UATP account. Letters from David Groelinger, Regency Holdings' CFO, to Continental show that prior to the October 5 meeting, Groelinger was negotiating with Continental to keep the UATP account open. On September 19, 1994, Groelinger wrote

to Tom Ferazzi, Director of Cash and Credit Management at Continental:

> We appreciate the open discussion and spirit of cooperation that prevailed [at our recent meeting].... I expect that you will appreciate the reality of the situation and realize that both of our best interests will be served through cooperation; closing our account will make it impossible for Regency to continue in business and be able to meet its payment obligations to you or other parties.

Ferazzi Aff., Exhibit I. On September 28, 1994, Groelinger wrote to Michael Cox, Vice President and Treasurer of Continental: "We appreciate your willingness to work with us to solve this short-term problem and have based our payment schedule on your affirmation that our credit card account will be maintained." Cox Aff., Exhibit D. Shortly thereafter, Groelinger and Lelakis met with Continental to negotiate the terms of the note and the guaranty. The only reasonable interpretation of Continental's threat at that meeting was that it would revoke Regency Holdings' account if the note and the guaranty were not forthcoming.

**5.** Lelakis urges that his subjective state of mind with regard to the threat is the relevant inquiry for an economic duress defense, and not the state of mind of Continental, and that such an inquiry precludes summary judgment in this case. In so urging, he alleges that Continental may or may

### 3. *Discharge Due to Change of Risk*

 A guarantor's obligations must be strictly construed according to the terms of the guaranty and cannot be "altered, extended or enlarged" by either creditor or debtor without the guarantor's consent. *See Fehr Bros., Inc. v. Scheinman,* 121 A.D.2d 13, 509 N.Y.S.2d 304, 306 (1st Dep't1986). The guarantor cannot be held responsible to guarantee a performance different from that identified in the guaranty. *Id.* However, a guarantor-defendant

> cannot escape liability by relying on changes he initiated for his own benefit, which changes did not, in any case, have the effect of creating a new corporate identity or materially altering the relationship between the principal-debtor and the creditor or the obligations defendant freely chose to assume under the guaranty.

*Id.* at 310. Defendant Lelakis therefore bears the burden of showing, with all inferences being drawn in his favor, that any change in the risk of the guaranty was not within his control.[6] *See id.; see also Caldor, Inc. v. Mattel, Inc.,* 817 F.Supp. 408 (S.D.N.Y.1993).

 Defendant admits that Regency Holdings voluntarily filed for bankruptcy in November 1995. He alleges that because he believed that the terms of a debt financing plan had eliminated his personal liability under the guaranty, he consented to sell two valuable ships, the equity in which would have satisfied his debt to Continental. The plan, as described by defendant, involved the following provisions: Regency Holdings would release two ships to Summer Breeze

Shipping Corporation, in exchange for Summer Breeze paying Regency Holdings $4 million, and paying $21 million to Kawasaki Enterprises S.A. in return for Kawasaki's release of its claims to the vessels; Regency Holdings would receive an option to repurchase the vessels; and Continental would assign the guaranty to Summer Breeze for $1.5 million. Summer Breeze allegedly agreed not to enforce the guaranty. This plan, however, was never consummated. Lelakis nonetheless alleges that the risk of the guaranty dramatically changed because he consented to the sale of the two ships, the value of which he believed would cover the payments Regency Holdings owed to Continental, in reliance on the plan's consummation.

The failure of the deal described above was announced on the record in Bankruptcy Court on February 26, 1996. Specifically, counsel for the Official Committee of Unsecured Creditors, of which Continental was one, stated: "The broader deal, which was to come before the Court today involving a third party, Summer Breeze, which was to acquire substantially all of the assets of these estates, one way or the other, is not on the table. Summer Breeze walked away from the deal." Luth Aff., Exhibit A at 11. Lelakis knew of the failure of the Summer Breeze deal when, on February 28, 1996, he executed consents for the sale of the two vessels to Kawasaki in Bankruptcy Court. Lelakis has failed to present any evidence that any part of the Summer Breeze deal survived the broader deal's failure, and the

---

not have used the term "blacklist" to describe its intended actions with regard to Regency Cruises, but admits that his understanding of that term was that Continental would "cut off [Regency] Cruises' ability to ticket air travel on other airlines and with travel agents." Lelakis Supp.Cert. at ¶ 13. This understanding parallels the conduct that Continental is permitted to take pursuant to the terms of the contract. As Judge Preska noted in a similar case:

> Defendants also argue that a claim for duress usually requires a determination of a party's state of mind, and, therefore, usually precludes a claim of summary judgment. Nonetheless, [the defendant] simply has failed to establish the existence of a wrongful threat, and defen-

dants' argument, and defendants' economic duress argument must fail.

*Orix Credit Alliance, Inc. v. Bell Realty, Inc.,* 1995 WL 505891, at *6 (S.D.N.Y. August 23, 1995). The threshold determination for an economic duress defense is that the threat itself be wrongful.

6. Lelakis failed to raise the change of risk defense in his Answer, and therefore can be deemed to have waived the defense. *See* Fed. R.Civ.P. 8(c). However, as leave to amend the Answer to assert an omitted affirmative defense is freely given if the requirements of Fed.R.Civ.P. 15(a) or 15(b) can be met, in the interest of expediency the Court will consider this defense on this motion for summary judgment.

record of the Bankruptcy Court proceeding directly contradicts such an assertion.

As noted above, a defendant cannot rely on the defense of change of risk if the change was initiated for the defendant's benefit and was within the defendant's control. *See Fehr Bros.*, 509 N.Y.S.2d at 310; *Caldor*, 817 F.Supp. at 412. In *Caldor*, defendant Caldor had guaranteed payment to Mattel, Inc. of the present and future debts of Caldor's wholly owned subsidiary, Leisure Line Toys, Inc. Over ten years later and after being acquired itself by another store, Caldor divested itself of assets including those related to Leisure Line. Leisure Line was not successful on its own and fell behind in its payments to Mattel. Mattel demanded that Caldor honor the guaranty, and Caldor countered, *inter alia*, that its loss of control over Leisure Line constituted a material alteration of Caldor's assumed risks and voided the guaranty. The court disagreed, finding that Caldor's loss of control over Leisure Line changed the nature of the risk, but that "standing alone, loss of control is not enough to discharge the duties of the Guarantor." *Caldor*, 817 F.Supp. at 412. In addition, the court noted that Caldor had itself created the conditions that caused the change in risk and could be considered to have consented to it. *Id.*

Here, unlike in *Caldor*, Lelakis had control over Regency Holdings when the ships were sold and the change of risk allegedly occurred. Lelakis himself consented to the sale of the vessels to Kawasaki. Although this sale may have changed the personal risk to Lelakis in that it liquidated allegedly valuable assets of the company whose debt he guaranteed, Lelakis initiated this change of risk himself. He consented to the Kawasaki sale after the in-court announcement that the broader deal with Summer Breeze had fallen through. Even if Lelakis believed Summer Breeze would follow through on the portion of the deal discharging the guaranty, he sold the ships with knowledge that the Summer Breeze deal was dead.[7] As a result, any change of risk Lelakis assumed, he assumed voluntarily. The change of risk to Lelakis was initiated by Lelakis and entirely within his control.

Defendant has failed to satisfy an essential element of his change of risk defense, namely that the change of risk was beyond his control. Continental is entitled to summary judgment on this defense as well.

### D. Defendant's Request for Further Discovery Under Fed.R.Civ.P. 56(f)

■ Defendant has made several requests for further discovery pursuant to Fed.R.Civ.P. 56(f), which provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This Circuit uses a four-part test to analyze the sufficiency of an affidavit requesting additional time to conduct discovery before a summary judgment determination. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994). A Rule 56(f) affidavit must include: the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; the affiant's efforts to obtain those facts; and why those efforts were not successful. *Id.; see also Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 422 (2d Cir.1989). Defendant's Rule 56(f) affidavit must establish a reasonable expectation that the proposed discovery will provide evidence to support the insufficient elements of his affirmative defenses.

---

**7.** Lelakis alleges that Summer Breeze held an "option" to proceed with the deal and was attempting to sell the option in February 1996. Lelakis Supp.Cert. at ¶ 19. He does not offer any evidence to support this contention, which is directly contradicted by the transcript of the proceedings in the Bankruptcy Court. *See* Luth Aff., Exhibit A. He further alleges that he "expected that Summer Breeze would sell the option and consummate the deal." Lelakis Supp.Cert. at ¶ 19. Defendant's expectation does not alter the fact that he consented to the sale of the ships after the failure of the Summer Breeze deal was announced.

First, defendant requests Continental's internal correspondence concerning Regency Cruises' payments that were due under the UATP. Defendant asserts that these documents would confirm Continental's alleged threats to Lelakis. However, the relevant inquiry with regard to any alleged threat is what Continental representatives conveyed to Lelakis at the October 5 meeting, not what they discussed among themselves. Lelakis has failed to show that Continental threatened him unlawfully at that meeting. Internal documents will not transform a lawful threat into an unlawful one. This proposed discovery would not support Lelakis' economic duress defense.

Defendant also requests Continental's internal documents concerning the negotiations of the note and the guaranty to support his economic duress and fraudulent inducement defenses. Again, as Lelakis has failed to allege an unlawful threat, internal documents regarding its negotiations of the note and guaranty are irrelevant to his economic duress defense. Similarly, Continental's records of its negotiations with Regency Holdings or Regency Cruises will not affect Lelakis' own negligence with regard to the guaranty.

Defendant next requests documents concerning the Summer Breeze assignment in support of his change of risk defense. On May 24, 1996, Continental sent Lelakis a copy of the proposed assignment. As this deal fell through and was never approved by the Bankruptcy Court, and because Lelakis had knowledge of its failure when he sold the ships, more discovery on this matter would not support his change of risk defense.

Next, Lelakis requests copies of guaranties Continental has drafted in languages other than English. This request is entirely frivolous. Regency Holdings' attorney, and not Continental, drafted the guaranty at the request of Regency Holdings' CFO. Because Continental had no involvement in the drafting of the guaranty, this discovery would lend no support to Lelakis' defenses.

Finally, defendant requests documentation of Regency Holdings' payments under the amended note. Continental has alleged that Regency Holdings made several payments on the amended note, in varying amounts, between January and August 1995. As the record before the Court does not adequately substantiate these payments, Continental is ordered to produce all documentation of these payments to defendant by October 18, 1996. An evidentiary hearing will be held if necessary after the completion of the requested discovery to determine the amount of damages.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on the guaranty and striking defendant's affirmative defenses is granted. A conference is scheduled for October 23, 1996, at 4:30 p.m.

SO ORDERED.